**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MGM RESORTS INTERNATIONAL, et al.,<br><br>Plaintiff(s),<br><br>v.<br><br>PACIFIC PILLOWS, LLC,<br><br>Defendant(s). | 2:13-CV-1404 JCM (NJK) |

**ORDER**

Presently before the court is plaintiffs'/counterdefendants' MGM Resorts International ("MGMRI"), CityCenter Land, LLC ("CityCenter"), Mirage Resorts, Inc. ("Mirage"), Mandalay Corp. ("Mandalay"), and Mandalay Resort Group ("MRG") (collectively "MGM") motion to dismiss counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. #18). Defendant/counterclaimant Pacific Pillows, LLC ("Pacific Pillows") has filed an opposition (doc. #21), to which plaintiffs/counterdefendants have replied (doc #22).

**I.   Background**

The instant dispute centers around the sale of pillows and other bedding products using marks owned by MGM. Since 2004, Pacific Pillows has operated a website that allows patrons to purchase bedding products that are used in various hotels including several hotels owned by MGM. The website allows potential patrons to "shop by hotel" and choose a hotel from a drop-down menu to see what bedding products are featured in that particular hotel. Additionally, pillows sold by Pacific

**James C. Mahan**
**U.S. District Judge**

Pillows are named after hotels that MGM owns.

MGM has trademarked the names of its hotels as related to hotel services. Beginning in 2012 MGM began selling pillows and bedding products using the marks owned by MGM.

MGM brought suit against Pacific Pillows for trademark infringement, trademark counterfeiting, unfair competition, false advertising, common law trademark infringement and common law unfair competition. In its answer, Pacific Pillows alleges that MGM engages in false advertising and that MGM improperly contacted Pacific Pillows' suppliers and forced them to restrict the sale of products to Pacific Pillows.

Based on these allegations Pacific Pillows has raised nine counterclaims: (1) unfair competition under the Sherman Act; (2) unfair competition under the Clayton Act; (3 and 4) false advertising under the Lanham Act; (5) unfair competition under the Federal Trade Commission Act; (6) common law unfair competition; (7) common law wrongful interference with contractual relations; (8) common law wrongful interference with prospective economic advantage; and (9) invalidation in the alternative. MGM filed the instant motion to dismiss all counterclaims for failure to state a claim upon which relief can be granted.

**II. Discussion**

**A. Standard of Review**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

. . .

**James C. Mahan**
**U.S. District Judge**

- 2 -

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. at 1949. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. at 1949.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id*. (internal quotations omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

**B. Analysis**

*(1) Unfair competition under the Sherman Act*

Accepting all the allegations in the counterclaim as true, it fails to provide any legal basis for Pacific Pillows' Sherman Act claims against MGM.

To state a claim under Section 1 of the Sherman Act, the claimant must show: (1) the existence of a contract, combination, or conspiracy among two or more separate entities that (2) unreasonably restrains trade and (3) affects interstate or foreign commerce. *Jack Russell Terrier Network v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1033 (9th Cir. 2005). Pacific Pillows' counterclaim falls short because it does not allege that MGM acted in concert with Pacific Pillows' suppliers in order to unreasonably restrain trade. Pacific Pillows claims that MGM contacted Pacific Pillows' suppliers and demanded that the suppliers no longer do business with Pacific Pillows, but Pacific Pillows does not claim that MGM and the suppliers conspired to restrain trade. Pacific Pillows' description of MGM "demanding" that the suppliers comply with its wishes further illustrates that this was not a decision orchestrated by multiple independent decision makers. Any inference that the suppliers and MGM acted in concert does not rise above the speculative level.

1 *Twombly*, 550 U.S. at 555.

2     Pacific Pillows is also unable to state a claim under Section 2 of the Sherman Act. In order to prevail on such a claim, the claimant must show the possession of monopoly power in the relevant market. *Inter-County Title Co. v. First Am. Title Co. of Nev.*, 259 F. Supp. 2d 1107, 1109 (D. Nev. 2003). Pacific Pillows' claim does not allege that MGM has a monopoly in any market. In its opposition to dismissal, Pacific Pillows does assert that MGM has significant purchasing power in the pillow and luxury bedding market, but MGM points out that there are over 51,000 hotels in the United States, which severely undercuts the argument that the 5 hotels involved in this case have a monopoly in the pillow and bedding market. Pacific Pillows' claim has failed to allege facts supporting a Section 2 Sherman Act violation; it has provided only labels and conclusions that MGM has a monopoly in any market. The claim must be dismissed.

*(2) Unfair competition under the Clayton Act*

There is no liability for the buyer of goods under the Clayton Act. *McGuire v. Columbia Broad. Sys., Inc.*, 399 F.2d 902, 906 (9th Cir. 1968). Pacific Pillows concedes dismissal of this claim. (Doc. #21, 14:21-25).

*(3) False advertising under the Lanham Act regarding pillow tags*

Pacific Pillows does not have standing to bring this claim. In order to have standing, a claimant must have a "concrete and particularized" injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Pacific Pillows has not alleged such an injury. In the claim, Pacific Pillows states only that the advertising done by MGM has created "significant confusion in the marketplace" and it has harmed Pacific Pillows. This vague and speculative claim is not the kind of cognizable injury required for standing. Pacific Pillows' allegation that MGM mislabeled its pillow does not give Pacific Pillows standing, especially when it is not even a consumer of MGM's product.

Even if Pacific Pillows did have standing, its claim would fail. In order to prevail on a Lanham Act false advertising claim, the claimant must show: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the

1 deception is material, in that it is likely to influence the purchasing decision; (4) the defendant
2 caused its false statement to enter interstate commerce; and (5) the claimant has been or is likely to
3 be injured as a result of the false statement, either by direct diversion of sales from itself to a
4 defendant or by a lessening of the goodwill associated with its products. *Southland Sod Farms v.*
5 *Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

6       Pacific Pillows argues that an incorrect registry number on pillow tags constitutes false
7 advertising that satisfies the elements of a false advertising claim. Pacific Pillows' claim fails
8 because the registry number on the tag is not a commercial advertisement. Commercial
9 advertisements under the Lanham Act require commercial speech intended to influence customers
10 to buy goods. *Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999).
11 The incorrect registry number is simply a series of letters and numbers that means nothing to
12 consumers. The number does not give typical consumers any information about the pillow, and it
13 certainly does not influence customers to buy the pillow.

14       Pacific Pillows argues that MGM itself advertises on pillow tags by putting hotel logos on
15 them. However, even if part of the pillow tag may contain advertising, the registry number itself is
16 not a commercial advertisement. Pacific Pillows has also failed to plead that the registry number is
17 likely to influence purchasing decisions, and it does not explain how the incorrect registry number
18 causes injury to Pacific Pillows.

19       Pacific Pillows has failed to state a claim for false advertising under the Lanham Act, and the
20 claim must be dismissed.

21       *(4) False advertising under the Lanham Act regarding whether pillows are used in MGM*
22       *hotels as claimed*

23       Pacific Pillows claims that MGM sells a pillow named "Aria" on its website and physical
24 stores. Pacific Pillows further states the "Aria" pillow is not the exclusive pillow used at the Aria
25 hotel, and that a pillow similar to the "Aria" pillow is only used in a small number of rooms.

26       In order to prevail in a Lanham Act false advertising claim, the claimant must show a false
27 statement of fact by the defendant in a commercial advertisement about its own or another's product.

28

**James C. Mahan**
**U.S. District Judge**

- 5 -

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

Pacific Pillows does not have standing to bring this claim for the same reasons it lacks standing to bring the previous claim.

Even if Pacific Pillows did have standing for this claim, the claim fails because it has not pleaded any false statement of fact from MGM. Pacific Pillows never alleges that MGM advertises or otherwise claims that a customer that purchases the "Aria" pillow will receive the same pillow that is found in every room at the Aria hotel. In addition, even if MGM did claim that the "Aria" pillow is the same pillow that is found in rooms at the Aria hotel, both sides agree that a similar pillow is found in some rooms in the Aria hotel, so the statement would not be false. There is no alleged false statement from MGM, so the claim must be dismissed.

*(5) Unfair competition under the Federal Trade Commission Act*

Pacific Pillows concedes that there is no private right of action under the Federal Trade Commission Act and withdraws this counterclaim. (Doc. #21, 21:4-5)*.*

*(6) Common law unfair competition*

This claim is simply a rehash of the claims discussed above. Pacific Pillows contends that MGM's action of contacting Pacific Pillows' suppliers and telling them not to do business with Pacific Pillows amounts to unfair competition. Pacific Pillows urges the court to use wide discretion in order to determine that MGM's conduct was unfair, however, Pacific Pillows does not give one example of a court applying this tort in the manner it suggests it should be applied here.

MGM correctly points out that the common law tort of unfair competition is "generally thought to be synonymous with the act of 'passing off' one's goods as those of another . . ., by which a person exploits a competitor's reputation in the market." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997). MGM is not "passing off" Pacific Pillows' products as its own, and thus this claim must be dismissed.

*(7) Common law wrongful interference with contractual relations*

To establish intentional interference with contractual relations, the plaintiff must show: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts

**James C. Mahan**
**U.S. District Judge**

- 6 -

intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage. *Sutherland v. Gross*, 772 P.2d 1287, 1290 (1989).

Assuming the pleaded facts to be true, MGM did intentionally interfere with Pacific Pillows' contractual relationships. The next step of the analysis requires determining whether MGM's intentional interference was improper.

> In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:
>
> (a) the nature of the actor's conduct,
>
> (b) the actor's motive,
>
> (c) the interests of the other with which the actor's conduct interferes,
>
> (d) the interests sought to be advanced by the actor,
>
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
>
> (f) the proximity or remoteness of the actor's conduct to the interference and
>
> (g) the relations between the parties.

Restatement (Second) of Torts § 767 (1979). Using these factors, MGM did not engage in improper action when it contacted Pacific Pillows' suppliers. According to the facts alleged, MGM acted in order to notify the suppliers that they were supplying to a company that was infringing on MGM marks. The interest sought to be advanced by MGM was the protection of its trademarks, which is a legitimate social interest. In summary, on the basis of these seven factors, the Court concludes that the actions of MGM were not improper.

There was intentional action on the part of MGM to disrupt the contractual relationship between Pacific Pillows and its suppliers, however, the action was not improper. Because Pacific Pillows did not plead improper action on the part of MGM, this claim must be dismissed.

1     (8) *Common law wrongful interference with prospective economic advantage*

2     To state a claim for interference with prospective economic advantage the proponent of the claim must allege: (1) a prospective contractual relationship; (2) the defendant's knowledge of the relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of a privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct. *Leavitt v. Leisure Sports, Inc.*, 103 Nev. 81, 88, 734 P.2d 1221, 1225 (1987). Improper or illegal interference is crucial to the establishment of a wrongful interference with prospective economic advantage claim. *Las Vegas-Tonopah-Reno State Line, Inc. v. Gray Line Tours of S. Nev.*, 792 P.2d 386, 388 n.1 (1990).

    Pacific Pillows does not provide any allocations of wrongful conduct other than the Sherman Act claims above. Because, as discussed above, there was no improper action on the part of MGM to prevent future relationships with suppliers and because the prior claims fail, there is no wrongful conduct on the part of MGM, and this claim must be dismissed.

    *(9) Invalidation in the alternative.*

    Pacific Pillows asks that if the court finds it has been using MGM hotel names as common law trademarks that this court issue a declaration of invalidity with respect to MGM's marks and marks applied for. At this point there has been no determination as to whether Pacific Pillows has been using MGM marks, so this issue cannot be addressed.

    Accordingly,

    IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that MGM's motion to dismiss (doc. # 18) be, and the same hereby, is GRANTED IN PART.

. . .

. . .

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 8 -

1     IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that counterclaims 1, 2, 3, 4, 5, 6, 7 and 8 are dismissed.

DATED May 28, 2014.

_____
**UNITED STATES DISTRICT JUDGE**